UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

**AAFIA SIDDIQUI,**

            Movant,

      -against-                             14-cv-3437
                                                   (RMB)

**UNITED STATES OF AMERICA,**

            Respondent.

------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO RECUSE**

**PRELIMINARY STATEMENT**

This memorandum is respectfully submitted in support of the within motion to recuse this Court from presiding over the instant 28 U.S.C. § 2255 proceeding and for random reassignment to a different Judge. The facts in support of the motion are set forth in the accompanying Declaration of Robert J. Boyle, Esq.

**POINT**

**THE APPEARANCE OF FAIRNESS WARRANTS
RE-ASSIGMENT TO A DIFFERENT JUDGE**

28 U.S.C. § 455(a) provides that "[a]ny justice judge or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." As the United States Court of Appeals for the Second Circuit recently noted, "[t]his statute embodies the principle that 'to perform its highest function in the best way justice must satisfy the appearance of justice.'" *Ligon v. The City of New York*, 736 F.3d 118, 123 (2d Cir. 2013), quoting *In re Murchison*, 349 U.S. 133, 136 (1955). The goal of the statute is, as the Court said in *Ligon*

> to avoid not only partiality but also the appearance of partiality. The section does so by establishing an objective standard designed to promote public confidence in the impartiality of the judicial process. The rule functions as a critical internal check to ensure the just operation of the judiciary. Our Court, sitting *en banc* has stated that there exists unusual circumstances where both for the judge's sake and the appearance of justice, an assignment to a different judge is salutary and in the public interest, especially as it minimizes even a suspicion of partiality. And as other circuits have correctly noted, if the question of whether §455 (a) requires disqualification is a close one, the balance tips in favor of recusal.

*Id.* at 123-124 (internal citations and quotation marks omitted).

§ 455(a) is evaluated on an "objective" basis. *Litkey v. United States*, 510 U.S. 540, 548 (1994). Therefore, the question before a court facing a recusal motion is whether "an objective disinterested observer fully informed of the underlying facts [would] entertain significant doubt that justice would be done absent recusal." *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008).

§ 455(b) of the statute sets forth the circumstances under which a court "shall" disqualify itself. Among those are where a judge has "personal knowledge of disputed evidentiary facts concerning the proceeding"(§ 455(b)(1)), and where the judge himself is "likely to be a material witness in the proceeding" (§ 455(b)(5)(iv)). The "facts" of which the court is aware must come from an extrajudicial source. *SEC v. Razmilovic*, 738 F.3d 14, 30 (2d Cir. 2013).

The standard for recusal under each section of the statute discussed above is satisfied in this case. One of the determinations that this Court will have to make is whether it was proper for the Court to permit the three attorneys hired by the government of Pakistan to represent Aafia Siddiqui over her repeated objections. A second and related claim is whether those attorneys had an actual conflict of interest notwithstanding their assurances that they would represent Dr. Siddiqui's interests only. Underlying both claims is, of

course, that Dr. Siddiqui maintains that it was the government of Pakistan that was responsible for her 2003 arrest and detention.

Counsel Linda Moreno, Charles Swift and Elaine Sharp entered into an agreement with the government of Pakistan. The agreements were negotiated and executed by Ambassador Husain Haqqani (Boyle Dec., Exhibit 1). During the conference on September 23, 2009, this Court stated that after reviewing the agreements and obtaining assurances of counsel, there was no need for an inquiry of Dr. Siddiqui pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982). The court ruled that the attorneys would be permitted to remain in the case over Dr. Siddiqui's objections. Even after the Court's ruling, Dr. Siddiqui continued to reject the attorneys, stating on several occasions that they were not representing her own interests but the interests of the government of Pakistan (T. 347-48).

During the course of the proceedings, after further expressions of dissatisfaction by Dr. Siddiqui, this Court characterized the attorneys hired by Pakistan as a veritable "dream team" who were being paid up to $2 million (T. 1167). On January 27, 2010, Husain Haqqani, the Ambassador from Pakistan to the United States at the time, came to court to observe the proceedings. Prior to taking the bench this had a private meeting Ambassador Haqqani in

chambers. The parties were informed of the meeting after it had taken place (T. 1406).

In the case at bar, Dr. Siddiqui alleges that the Government of Pakistan was responsible for her illegal kidnapping and arrest. Ambassador Haqqani was not only a representative of the Government of Pakistan, but also the individual responsible for retaining and paying the defense counsel which Dr. Siddiqui rejected . In light of Dr, Siddiqui's allegations in the 2255 motion now before the Court, an "objective disinterested observer", *United States v. Carlton, supra.*, could view this Court's meeting with him as a meeting with an interested party. Dr. Siddiqui never accepted the three attorneys hired by the government of Pakistan. She distrusted that government and told this Court that the attorneys were representing the interests of the government of Pakistan and not her own (T. 347-48). The attorneys and the government of Pakistan were, in many ways, her adversaries throughout the proceedings.

This 28 U.S.C. § 2255 motion specifically raises the constitutionality of this Court's decision allowing the lawyers into the case, its finding that they did not have a conflict and that there was no breakdown in the attorney-client relationship. The testimony of former Ambassador Haqqani may be necessary in making this determination. His account of his meetings with the attorneys, their representations to him and his representations to them are appropriate

subjects for examination. Thus, his meeting with this Court during trial, and the matters discussed, are also a proper subject of examination. For example, was the process leading up to the retainer agreement discussed? Did the Ambassador raise any concerns about Dr. Siddiqui's rejection of the hired counsel, her mental status, and/or Dr. Siddiqui's stated belief that the attorneys were representing the government of Pakistan's interests and not her own? If so, the Court would have knowledge of disputed facts and/or be a material witness. 28 U.S.C. § 455(b)(1) and (5)(iv). At best, this would place the Court, who would be the finder of fact in an extremely awkward position If, for example, former Ambassador Haqqani gave an account of the meeting that is materially at odds with the Court's recollection, the Court would have knowledge of disputed evidentiary facts. 28 U.S.C. § 455(b) (1). Even if former Ambassador Haqqani testified that nothing of substance was addressed during his meeting, and the Court's recollection was consistent with this account, the "appearance of fairness" would nonetheless be implicated. Dr. Siddiqui never accepted the attorneys the government of Pakistan hired for her. She asserted time and again that they were not representing her interests (T. 347-48). That the court then had an off-the-record meeting with the person who personally hired those attorneys could cause an objective observer to have "significant doubt" as to whether justice would be served absent recusal. *Id.*

To preserve the appearance of justice, this Court should recuse itself from this motion.

WHEREFORE, for all the foregoing reasons this Court should issue an order recusing itself from this case, ordering that a new Judge be randomly assigned and granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
     May 14, 2014                            Respectfully submitted,

                                          ROBERT J. BOYLE
                                          351 Broadway
                                          3rd floor
                                          New York, N.Y. 10007
                                          (212) 431-0229
                                          Rjboyle55@gmail.com
                                          Attorney for Aafia Siddiqui

Of Counsel:
TINA FOSTER, ESQ.