UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                                                           :

AAFIA SIDDIQUI,                           :

                       Petitioner,            :          14 Civ. 3437 (RMB)

                           - v. -                    :

UNITED STATES OF AMERICA,     :

                       Respondent.   :

------------------------------------------------------X

## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER'S MOTION TO RECUSE

                                                                           PREET BHARARA
                                                                            United States Attorney for the
                                                                            Southern District of New York
                                                                            One Saint Andrew's Plaza
                                                                            New York, New York 10007

Jenna M. Dabbs
Assistant United States Attorney
     -Of Counsel-

**PRELIMINARY STATEMENT**

The petitioner, Aafia Siddiqui (hereinafter "Siddiqui" or the "petitioner"), moves to recuse this Court from presiding over her pending motion pursuant to Title 28, United States Code, Section 2255, and any related proceedings, and that the matter be randomly assigned to a different District Judge. During the underlying criminal trial, Siddiqui was represented by five attorneys, three of whom were retained by the government of Pakistan. On January 27, 2010, at the start of the defense case and nine days into the trial, the Ambassador from Pakistan to the United States at the time, Husain Haqqani, came to court to observe the proceedings. Prior to the start of the trial day, the Court had a private meeting with Ambassador Haqqani in chambers. Siddiqui now asserts that the Court must recuse itself, claiming that the substance of the meeting between Ambassador Haqqani and the Court will be a "proper subject of examination" in connection with her pending motion pursuant to Section 2255, and accordingly that the Court may "have knowledge of disputed facts and/or be a material witness," which would implicate the "appearance of fairness." (Pet. Br. at 6). For the reasons that follow, the Court should deny Siddiqui's motion.

**BACKGROUND**

Indictment 08 Cr. 826 (RMB), filed on September 2, 2008, charged Siddiqui in seven counts. Count One charged Siddiqui with attempting to kill United States nationals, in violation of Title 18, United States Code, Section 2332(b). Count Two charged her with attempting to kill United States officers and employees, in violation of Title 18, United States Code, Section 1114. Count Three charged her with armed assault of United States officers and employees, in violation of Title 18, United States Code, Section 111(b). Count Four charged her with discharging a firearm during a crime of violence, in violation of Title 18, United States Code,

1

Section 924(c). And Counts Five through Seven charged Siddiqui with assaulting United States officers and employees, in violation of Title 18, United States Code, Section 111(a).

The criminal charges arose out of an attempt by Siddiqui, a Pakistani national educated in the United States, to murder United States officials following her capture in Afghanistan in July 2008. Specifically, on July 17, 2008, Siddiqui was arrested by Afghan officials in Ghazni City, Afghanistan, and found to be in possession of various documents, including instructions for the making of explosives and notes regarding possible attacks against the United States. The following day, members of the United States Army and Special Agents of the Federal Bureau of Investigation ("FBI") went to an Afghan National Police ("ANP") compound for the purpose of interviewing Siddiqui. Before they could do so, however, Siddiqui grabbed an unattended machine gun, aimed it at the American officials, and tried to kill them.

The Government's case at trial proved beyond any reasonable doubt that Siddiqui attempted to murder United States officials on July 18, 2008, by grabbing an unattended machine gun and firing it at the unsuspecting officials. The Government proved Siddiqui's guilt through various witnesses, including six eyewitnesses to the attempted murder and three witnesses in the vicinity of the attempted murder; experts on ballistics and fingerprints; and the FBI case agent who handled the investigation of this attempted murder in Afghanistan. In addition, the Government introduced physical evidence, including the firearm that Siddiqui used in her attempted murder, documents that were recovered from Siddiqui upon her capture on July 17, 2008, and shell casings and other items that were collected from the scene of the crime. Siddiqui called several witnesses in her defense, including: (1) two Afghan law enforcement witnesses who testified by videotaped depositions (taken in Kabul, Afghanistan on December 22, 2009 at the defense request pursuant to Federal Rule of Criminal Procedure 15); (2) a forensic

metallurgist; and (3) Siddiqui herself.

Trial commenced on January 13, 2010, and ended on February 3, 2010, when the jury found Siddiqui guilty of all counts in the Indictment. On September 23, 2010, this Court sentenced Siddiqui principally to an aggregate term of 86 years' imprisonment. Siddiqui is currently serving her sentence.

Siddiqui was represented by several different attorneys during the life of her criminal case. When Siddiqui was first arrested and presented in this District, in early August of 2008, Elizabeth M. Fink, Esq., was appointed to represent her. Other counsel from Ms. Fink's office also appeared on Siddiqui's behalf in the early stages of the case, as did Elaine Whitfield Sharp, who was introduced during court proceedings at that time as an attorney for Siddiqui's family. Ms. Fink served as appointed counsel to Siddiqui for nearly seven months, and was relieved on February 23, 2009. At that time, Dawn Cardi and her associate, Chad Edgar, were appointed to represent Siddiqui. Ms. Cardi and Mr. Edgar represented Siddiqui through a competency hearing, the trial of this matter, and on appeal. In mid-August 2009, three additional attorneys formally entered notices of appearance in Siddiqui's case – Linda Moreno, Charles Swift, and Elaine Whitfield Sharp. At that time, Ms. Moreno, Mr. Swift, and Ms. Sharp represented to the Court that they had been retained to represent Siddiqui, through the conclusion of proceedings before the District Court, by the government of Pakistan. During a conference held on September 2, 2009, it was determined that Ms. Cardi would serve as lead counsel for Siddiqui, and Ms. Moreno, Mr. Swift and Ms. Sharp would play a supporting role.

On May 12, 2014, Siddiqui filed a motion, pursuant to Title 28, United States Code, Section 2255, to vacate her conviction. In the pending motion, Siddiqui makes several claims, all concerning her representation during the criminal case. Specifically, Siddiqui claims that she

was denied her Sixth Amendment right to counsel in three different ways. First, she claims that she was forced by the Court to accept the counsel retained by the government of Pakistan (specifically, Ms. Moreno, Mr. Swift and Ms. Sharp), and thereby denied the right to conduct her own defense. Second, Siddiqui claims that she had a conflict of interest with the attorneys who were retained by the government of Pakistan, and the Court failed to inquire whether she was willing to waive that conflict, thereby denying her right to conflict-free counsel.[1] And third, she claims that the Court abused its discretion when it denied her motion for a continuance of the trial date and substitution of counsel on the basis that there had been a complete breakdown in the attorney-client relationship. Relatedly, Siddiqui also claims that she was denied effective assistance of trial and appellate counsel. Finally, in her motion pursuant to Section 2255, Siddiqui claims that the Government's failure to disclose favorable evidence resulted in a violation of her right to due process. The Government will respond to Siddiqui's Section 2255 motion under separate cover, pursuant to the schedule set by the Court.

On May 15, 2014, Siddiqui filed the instant motion, asking that the Court recuse itself from presiding over the Section 2255 motion and related proceedings. For the reasons that follow, this Court should deny the motion.

## **ARGUMENT**

Siddiqui argues in the instant motion that a brief meeting between the Court and the Pakistani Ambassador to the United States, which meeting took place well into the trial of this matter, at the start of the defense case, requires the Court's recusal in connection with her pending habeas petition, in order to preserve the appearance of justice and fairness, and because

---

[1] The specific conflict asserted by Siddiqui derives from her claim that the government of Pakistan was responsible for unlawfully arresting and detaining Siddiqui and her three children in March 2003.

4

as a result of the meeting, the Court may have personal knowledge of disputed evidentiary facts or likely be a material witness in the habeas proceeding. Siddiqui's allegations defy logic, are contrary to the record and entirely speculative, and for the reasons articulated below, do not warrant recusal.

A. **Applicable Law**

Title 28, United States Code, Section 455 provides, in relevant part, that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," and further shall also disqualify himself where he has "personal knowledge of disputed evidentiary facts concerning the proceeding," or where the judge, to his own knowledge, is "likely to be a material witness in the proceeding." Title 28, United States Code, Sections 455(a), (b)(1) and (b)(5)(iv). The Second Circuit has stated:

> The goal of section 455(a) is to avoid not only partiality but also the appearance of partiality. This section does so by establishing an objective standard designed to promote public confidence in the impartiality of the judicial process. The rule functions as a critical internal check to ensure the just operation of the judiciary. Our Court, sitting *en banc*, has stated that there exists unusual circumstances where both for the judge's sake and the appearance of justice, an assignment to a different judge is salutary and in the public interest, especially as it minimizes even a suspicion of partiality. And as other circuits have correctly noted, if the question of whether § 455(a) requires disqualification is a close one, the balance tips in favor of recusal.

Ligon v. City of New York, 735 F.3d 118, 123-24 (2d Cir. 2013) (internal citations and quotation marks omitted) (holding that the judge's making of numerous statements to the media during the pendency of the case, which statements intimated her views on the merits of the case and which resulted in the filing of lawsuits directed to the court and the publication of numerous stories while public interest in the outcome of the litigation was high, might cause a reasonable observer

5

to question her impartiality, thus requiring disqualification under Section 455(a)).

Thus the relevant question, under Section 455(a), is whether "the facts might reasonably cause an objective observer to question the judge's impartiality, or absent proof of personal bias requiring [recusal], that reassignment is advisable to preserve the appearance of justice." Ligon, 736 F.3d at 128; see also S.E.C. v. Razmilovic, 738 F.3d 14, 29 (2d Cir. 2013) ("the question is whether an objective and disinterested observer, knowing and understanding all of the facts and circumstances, could reasonably question the court's impartiality"); United States v. Carlton, 534 F.3d 97, 100 (2d Cir. 2008) (the question is whether "an objective, disinterested observer fully informed of the underlying facts [would] entertain significant doubt that justice would be done absent recusal"). Section 455(a) is "commonly limited to those circumstances in which the alleged partiality stems from an extrajudicial source." Carlton, 534 F.3d at 100; see also Razmilovic, 738 F.3d at 29 (the alleged bias "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge has learned from his participation in the case") (citation and internal quotations omitted).

Section 455(b)(1) requires recusal when a judge has "personal knowledge of disputed evidentiary facts concerning the proceeding." The Second Circuit has held that under Section 455(b)(1), the judge's personal knowledge of disputed evidentiary facts "must stem from an extrajudicial source to warrant disqualification." United States v. Coven, 662 F.2d 162, 168 (2d Cir. 1981); see also Carlton, 534 F.3d at 101 n.4 (the term "personal" in Section 455(b)(1) means "extrajudicial").

  B. Discussion

Siddiqui does not now assert, nor could she credibly do so, that the Court displayed or was subject to any partiality or bias in connection with the handling of the criminal case. The

6

only factual circumstance Siddiqui points to in support of her motion to recuse is the fact that on January 27, 2010, the morning that the Government rested and the defense case began, the District Court met privately with the Ambassador from Pakistan to the United States at the time, Husain Haqqani, who had come to court to observe the proceedings. At the start of the trial day on January 27, the Court stated:

> So let me just start by saying that we have with us in the audience today Ambassador Haqqani from Pakistan to the United States. I had a brief opportunity to meet him and to welcome him to the courtroom. [Addressing Ambassador Haqqani:] We acknowledge your presence and you are very welcome in this court.

(Trial Tr. at 1406). Based on this, Siddiqui asserts that the Court must recuse itself, claiming first that the substance of the meeting between Ambassador Haqqani and the Court will be a "proper subject of examination" in connection with her pending motion pursuant to Section 2255, and accordingly that the Court may "have knowledge of disputed facts and/or be a material witness," which would implicate the "appearance of fairness." (Pet. Br. At 6). The specific information that Siddiqui claims may have been discussed between the Court and Ambassador Haqqani during their brief meeting, which she avers would also be relevant to the resolution of the pending Section 2255 motion, is the following: "For example, was the process leading up to the retainer agreement [between the government of Pakistan and attorneys Moreno, Swift and Sharp] discussed? Did the Ambassador raise any concerns about Dr. Siddiqui's rejection of the hired counsel, her mental status, and/or Dr. Siddiqui's stated belief that the attorneys were representing the government of Pakistan's interests and not her own?" (Pet. Br. at 6).

As an initial matter, it defies logic, and contradicts the record, to suggest as Siddiqui does now that anything of substance would have been discussed between the Court and Ambassador Haqqani. The Court made clear shortly after the brief meeting took place that the purpose of the

meeting was simply to welcome the Ambassador to the courtroom and to make clear that he was welcome to observe the proceedings. This sort of private greeting and welcoming of a foreign dignitary is not at all surprising and indeed was not inappropriate under the circumstances. It is difficult to imagine that during such a brief, initial meeting, the Court and the Ambassador would have discussed any matters of substance, and particularly matters relating to Siddiqui's mental state or the circumstances of Siddiqui's relationship with her retained counsel.

In addition to defying logic, Siddiqui's claim that the Court acquired information outside the context of the judicial proceedings is also entirely speculative.[2] She has made no showing or specific allegation, apart from rank speculation as to what may have been discussed during the meeting, that the Court has any personal knowledge of disputed evidentiary facts by virtue of the meeting, as is required by Sections 455(b)(1) and (b)(5)(iv). Cf. United States v. Morrison, 153 F.3d 34, 48 (2d Cir. 1998) ("Where an interest is not direct, but is remote, contingent, or speculative, it is not the kind of interest which reasonably brings into question a judge's impartiality.") (internal citation and quotation marks omitted).

Moreover, even if the Court did discuss with Ambassador Haqqani the process leading up to the execution of the retainer agreement between the government of Pakistan and retained counsel, Siddiqui's mental state, or her concerns about her relationship with counsel (a supposition that, again, defies logic and is purely speculative), such a discussion would not render the Court a "material witness" with respect to Siddiqui's pending motion pursuant to Section 2255, or result in the Court's having extrajudicial "knowledge of disputed facts." It is not disputed that certain of Siddiqui's lawyers were retained to represent her by the government

---

[2] It is also not clear that the meeting between the Court and the Ambassador under these circumstances is appropriately or necessarily labeled "extrajudicial," as is required under the applicable statute, since the meeting occurred during the pendency of the trial, related to the Ambassador's attendance at the trial, and was described on the record during the proceedings.

of Pakistan, and that she, at times, expressed concerns about or disagreement with their retention on her behalf. Indeed, Siddiqui's views about her retained counsel (and her appointed counsel as well) were shared with the Court during the criminal case on a number of occasions, and evolved and shifted during the pendency of the case. For that reason, such a discussion between the Court and the Ambassador would likely be duplicative of the extensive discussion about these issues on the record during the case. It is also not at all clear that whatever the Ambassador may have had to say about these issues, to the extent he said anything at all, would be material or even relevant to the determination of the issues raised in Siddiqui's Section 2255 motion. What will ultimately be dispositive of the Section 2255 motion is what Siddiqui said to the Court regarding her counsel, and what she was advised by the Court with respect to her rights. The process leading up to the execution of the retainer agreement has nothing to do with whether Siddiqui's Sixth Amendment rights were violated. And the *Ambassador's* possible concerns about Siddiqui's mental state or her views with respect to counsel are of no moment, particularly in the case at bar, where Siddiqui was given numerous opportunities to share *her* views about her representation, and was not reluctant or hesitant about doing so.

Siddiqui further maintains that even if the brief discussion between the Court and Ambassador Haqqani was completely non-substantive, "the 'appearance of fairness' would nonetheless be implicated." (Pet. Br. at 6). The facts relied upon by Siddiqui do not cast doubt on the Court's impartiality. The Government submits that a reasonable person, knowing all the facts, would not question the Court's impartiality. Despite Siddiqui's argument to the contrary, the objective interpretation of the fact of the meeting, and what the Court relayed on the record concerning the meeting, is that the Court simply met with the Ambassador in private to convey the Court's welcome and to demonstrate an appropriate level of respect for the Ambassador's

9

presence given his official position. The Court's politeness in this regard, as an objective matter, does not compel its recusal from consideration of Siddiqui's motion pursuant to Section 2255 and related proceedings.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that the Petitioner's motion should be denied.

Dated: New York, New York
June 16, 2014

                                      Respectfully submitted,

                                      PREET BHARARA
                                      United States Attorney for the
                                      Southern District of New York

By:    /s/ Jenna M. Dabbs
                                      Jenna M. Dabbs
                                      Assistant United States Attorney
                                      (212) 637-2212