E78WsidC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

AAFIA SIDDIQUI,

        Petitioner,

    v.                                    14 CV 3437 (RMB)

UNITED STATES OF AMERICA,

        Respondent.
------------------------------x
                                  New York, N.Y.
                                  July 8, 2014
                                  12:00 p.m.

Before:

               HON. RICHARD M. BERMAN,

                            District Judge

                  APPEARANCES

ROBERT J. BOYLE
    Attorney for Petitioner


PREET BHARARA
    United States Attorney for the
    Southern District of New York
JENNA M. DABBS
    Assistant United States Attorney

1  THE COURT:  Mr. Boyle, was it your intention to have
2  Dr. Siddiqui at these proceedings going forward, or today?
3  MR. BOYLE:  Your Honor, I think we would only intend
4  on having her at the proceedings should the Court order an
5  evidentiary hearing or otherwise feel that her presence would
6  be appropriate.  For purposes of today's proceeding, we would
7  waive her appearance.
8  THE COURT:  Just so you know, when speaking with her,
9  she's always welcome, if she wants to be at any proceeding.  I
10  need advance notice to arrange for her to get here, but she is
11  more than welcome to be at all or any of these proceedings.
12  MR. BOYLE:  I've also been checking into, your Honor,
13  whether the facility where she is would have the capability of
14  a video feed should there be a particular proceeding that she
15  would want to observe or be present with, and they're working
16  on it.
17  THE COURT:  Is that still Carswell, in Texas?
18  MR. BOYLE:  Yes, that's still Carswell.
19  THE COURT:  Thank you.
20  The purpose of today's proceeding is for me to resolve
21  the recusal motion filed by Mr. Boyle.  That motion is dated
22  May 14, 2014.  Mr. Boyle, as counsel for Aafia Siddiqui, seeks
23  in that motion recusal of the Court, pursuant to 28, United
24  States Code, Section 455(a), (b)(1) and (b)(5)(iv).  Counsel
25  argues principally that "an objective observer would question

1    this Court's impartiality on issues raised in the Section 2255
2    motion," because on "January 27, 2010, the Honorable Husain
3    Haqqani, the then-ambassador from Pakistan to the United States
4    and the person who retained the attorneys, over Dr. Siddiqui's
5    objections, was present in court and that the Court stated that
6    it had met with Ambassador Haqqani prior to the start of the
7    day's proceedings."
8              Mr. Boyle's quote continues, "Upon information and
9    belief, none of the parties were present during this Court's
10   meeting with Ambassador Haqqani," and he adds that, "the Court
11   may have knowledge of disputed facts and/or might be a material
12   witness."
13             According to defense counsel, "Dr. Siddiqui believed
14   that the government of Pakistan was responsible for her 2003
15   detention and further believed that they were not acting in her
16   best interests in her criminal case when they hired defense
17   counsel."  By response dated June 15, 2014, the government
18   stated that the motion should be denied.  The government
19   states, "Siddiqui does not now assert, nor could she credibly
20   do so, that the Court displayed or was subject to any
21   partiality or bias in connection with the handling of the
22   criminal case.  The only factual circumstance Siddiqui points
23   to in support of her motion to recuse is the fact that on
24   January 27, 2010, the morning that the government rested [its
25   case against Dr. Siddiqui] and the defense case began, the

1  district court met privately with the ambassador from Pakistan
2  to the United States, at the time Husain Haqqani, who had come
3  to court to observe the proceedings."  The government argues
4  that, "it defies logic and contradicts the record to suggest,
5  as Siddiqui does now, that anything of substance would have
6  been discussed between the Court and Ambassador Haqqani.  The
7  Court made clear [on the record] shortly after the brief
8  meeting took place that the purpose of the meeting was simply
9  to welcome the ambassador to the courtroom and make clear that
10 he was welcome to observe the proceedings."

11         By letter dated June 30, 2014, Mr. Boyle waived any
12 reply brief and the parties waived oral argument.  The recusal
13 motion is denied.  The facts are as follows:

14         1.  CJA attorney Dawn Cardi was appointed to represent
15 Dr. Siddiqui by the Court on or about February 23, 2009.  She
16 succeeded CJA counsel Elizabeth Fink, who had been appointed by
17 Magistrate Judge Ronald L. Ellis on or about August 5, 2008,
18 and who had advised the Court that she was unable to continue
19 her representation due to health issues.

20         2.  Attorneys Linda Moreno, Elaine Sharp, and Charles
21 Swift were permitted by this Court to assist Ms. Cardi in
22 Dr. Siddiqui's defense at the request of, among others, the
23 government of Pakistan.  The details of this process will
24 likely be discussed in considering Mr. Boyle's and
25 Dr. Siddiqui's 2255 *habeas* petition on the merits.  It should

be noted that of the three, Ms. Sharp became involved in this case at an even earlier date, back on August 2008, when she was introduced to Magistrate Judge Ellis at the beginning of the case. Ms. Sharp was subsequently introduced to Magistrate Judge Pitman and described as "an attorney in the District of Massachusetts admitted to practice. She is representing [retained by] the Siddiqui family here." Ms. Sharp was at the time admitted *pro hac vice* by Magistrate Judge Pitman, and, thus, Ms. Sharp was involved in this case for approximately one and a half years before the Court met Ambassador Haqqani on January 27, 2010.

During a colloquy with this Court held on September 4, 2008, Ms. Sharp was described as having been admitted *pro hac vice* by Judge Pitman and as a representative of the Siddiqui family. Ms. Sharp also stated, "Aafia Siddiqui has asked me to represent her in this case as well." Tr. Sept. 4, 2008, 5:25 and 6:1.

Attorneys Moreno and Swift filed notices of appearance on behalf of Dr. Siddiqui in this case on August 2009.

3. Dr. Siddiqui gave written instructions in a letter to this Court dated October 15, 2010, that she did not wish to appeal her conviction and sentence. That letter appears on the docket as No. 316. It says the following: "I would like to inform you of the following, which I am writing while I am in perfect mental and physical health, not under the influence of

1   any drugs or under any other kind of duress.  If I need an
2   attorney to represent me or communicate with Court on my
3   behalf, then my attorney is Ms. Farha Ahmed.  This is to go in
4   effect immediately.  I waive all my rights to appeal the unjust
5   sentence given to me on September 23, 2010.  Nobody has the
6   right to appeal it on my behalf in any court of law in this
7   world.  I have made my appeal to God, and it has been
8   answered."

9            Notwithstanding Dr. Siddiqui's letter that I've just
10  quoted from, a notice of appeal was filed by Ms. Cardi and the
11  case was fully appealed to the Second Circuit.  The Second
12  Circuit affirmed the district court in the decision dated
13  November 5, 2012, and amended on November 15, 2012.  The Second
14  Circuit decision states, among other things, "Siddiqui's
15  convictions and sentence are hereby affirmed."

16           The Second Circuit decision was accompanied by a
17  summary affirmance which addressed issues not addressed in the
18  published opinion.

19           The Court notes that one of the issues raised in the
20  appeal was whether the Court erred in permitting Dr. Siddiqui
21  to testify on her own behalf against the advice of and over the
22  objection of all of her attorneys.  The Second Circuit Court of
23  Appeals stated as to this issue, "Here, the district court went
24  to extraordinary lengths to ensure that Siddiqui understood the
25  implications of testifying and had the capacity to testify.

1   Even were we to discern any daylight between the standards
2   governing a defendant's capacity to stand trial and those for
3   assessing her capacity to determine whether to testify (and
4   then actually to testify), we would find no reason to upset the
5   district court's implicit determination that Siddiqui did, in
6   fact, have the requisite capacity to make the latter decision
7   here."
8         4.   Mr. Boyle, via Court Exhibit A, which purports to
9   be a letter from Aafia Siddiqui, dated May 21, 2014, contends
10  that Dr. Siddiqui has changed her mind and now wishes to pursue
11  this recusal motion and also a *habeas* Section 2255 petition.
12        5.   As to the recusal motion specifically, with
13  respect to Pakistan Ambassador Haqqani, the court deputy was
14  advised on January 26, 2010, by the Siddiqui defense that he
15  wished to attend the trial proceedings and expected to come to
16  court on January 27, 2010.  I did not know the ambassador
17  beforehand and had never before spoken to him.  The ambassador
18  did appear in the courtroom in the morning very shortly before
19  the court proceedings began on January 27, 2010, and his
20  appearance coincided with the then-imminent conclusion of the
21  government's case presentation.  In fact, when the trial
22  resumed at or about 9:35 or 9:30 that morning, one stipulation
23  was read by the government and the government then rested.  I
24  greeted Ambassador Haqqani in the open courtroom and the robing
25  room, not chambers, for no more than a minute or two, entirely

```
 1   as a courtesy to a foreign dignitary.  The ambassador and I
 2   spoke English and exchanged pleasantries such as "a pleasure to
 3   meet you."  I said that the ambassador was welcome to be in the
 4   courtroom, which is also open to the public.  I told him that a
 5   seat had been reserved for him, that we would begin the case at
 6   approximately 9:30, that he would be free to stay and observe
 7   the trial as long as he wished, and that he would also be free
 8   to leave the courtroom if he wished to do so.  He thanked me
 9   for the courtesy extended.
10          6.  At no time did I discuss the merits of the case,
11   nor did I discuss, quoting now from Mr. Boyle's language, "the
12   process leading up to the retainer agreement" between Pakistan
13   and the three attorneys, nor "any concerns about Dr. Siddiqui's
14   rejection of the hired counsel, her mental status, and/or
15   Dr. Siddiqui's stated belief that the attorneys were
16   representing the government of Pakistan's interests and not her
17   own," from Mr. Boyle's submission.
18          7.  After that brief meeting with Ambassador Haqqani,
19   I returned to the courtroom and commenced the trial proceedings
20   and placed the following on the record, and this first part
21   that I'll quote was done without the jury being present:  "Good
22   morning, everybody.  Please be seated.  So let me just start by
23   saying that we have with us in the audience today Ambassador
24   Haqqani from Pakistan to the United States.  I had a brief
25   opportunity to meet him and to welcome to the courtroom.  We
```

1  acknowledge your presence and you are very welcome here in this
2  court."  No objection was raised.  We resumed the trial at
3  approximately 9:30, 9:35, somewhere in that time frame.
4  Ambassador Haqqani left the courtroom sometime prior to the
5  11:32 recess.  I have not seen or heard from him since then.
6         8.  There is no real or objectively reasonable
7  relationship between my greeting the ambassador on January 27,
8  2010, and the retainer agreement described by Mr. Boyle and/or
9  the approval given to three attorneys to assist Ms. Cardi in
10 September 2009, nor to any alleged conflict of interest between
11 and among those attorneys and any alleged negotiations or
12 discussions resulting in their being retained, about which I
13 know only what is included in the case record.
14       28, United States Code, Section 455(a) provides that
15 any justice, judge, or magistrate judge of the United States
16 shall disqualify himself in any proceeding in which his
17 impartiality might reasonably be questioned.  This is not such
18 a case.
19       28, United States Code, Section 455(b)(1) provides
20 that a court shall disqualify itself when he has personal
21 knowledge of disputed evidentiary facts about a proceeding.
22       28, United States Code, Section 455(b)(5)(iv) provides
23 that a court shall disqualify itself when it is likely to be a
24 material witness in a proceeding.  This is not such a case.
25       The defense argues that this standard is satisfied due

to the Court's meeting Ambassador Haqqani.  Mr. Boyle says, "That the Court had an off-the-record meeting with the person who personally hired [Linda Moreno, Elaine Sharp, and Charles Swift] could cause an objective observer to have significant doubt as to whether justice would be served absent recusal." Mr. Boyle also says that, "One of the determinations that the Court will have to make is whether it was proper for the Court to permit the three attorneys hired by the government of Pakistan to represent Aafia Siddiqui over her repeated objections.  A second and related claim is whether those attorneys had an actual conflict of interest, notwithstanding their assurances that they would represent Dr. Siddiqui's interests only."

In determining whether Section 455(a) requires recusal, the appropriate standard is objective reasonableness, whether an objective disinterested observer fully informed of the underlying facts would entertain significant doubt that justice would be done absent recusal.  <u>United States v. Carlton</u>, 534 F.3d 97 (2d Cir. 2008).  There can be no such significant doubt on the facts presented here.  The courtroom was and is open to the public.  The Court's greeting of a foreign dignitary in this case did not and could not reasonably have any influence on this Court's case determinations and/or the proceedings before it.  The Court's goal throughout this case was and is to conduct all proceedings fairly, efficiently,

1    and transparently.  There was no objectively reasonable
2    impropriety or appearance of impropriety.  "Recusal is
3    appropriate when a judge expresses a personal bias concerning
4    the outcome of the case at issue.  It is also usually warranted
5    when a judge has a direct personal or fiduciary interest in the
6    outcome of the case, regardless of whether or not the judge is
7    actually aware of that interest at the relevant times," and to
8    be sure, there are probably other scenarios when recusal may be
9    appropriate.  "But where a case by contrast involves remote,
10   contingent, indirect, or speculative interests,
11   disqualification is not required."  United States v. Lovaglia,
12   954 F.2d 811 (2d Cir. 1992); also, King v. United States, 576
13   F.2d 432 (2d Cir. 1978).
14           Disqualification is not warranted or appropriate here.
15   It is the practice in the Southern District of New York that
16   the trial judge reviews 2255 petitions as has been filed with
17   this Court.  Southern District of New York Local Rule 9(a)
18   states that when a motion for collateral relief under 28,
19   United States Code, Section 2255 is filed, it shall be assigned
20   for all further proceedings to the judge to whom the underlying
21   case was assigned, and it is my intention to continue that
22   process.
23           Based on the foregoing, the motion submitted by
24   Mr. Boyle for recusal is denied.  I think that's it in terms of
25   scheduling.

E78WsidC

1          I think the government has a response due sometime in
2     September, is that correct?  Or August.
3          MS. DABBS:  I think the response is due August 18,
4     your Honor.
5          THE COURT:  And your reply, Mr. Boyle, is 9/25, is
6     that right?
7          MR. BOYLE:  I believe so, your Honor.  Yes.
8          THE COURT:  And if you do wish to have Dr. Siddiqui
9     present, if you give me sufficient notice for any further court
10    proceedings, I'll be happy to arrange that.
11         MR. BOYLE:  Thank you, your Honor.
12         THE COURT:  You bet.  Nice to see you both.
13         MS. DABBS:  Thank you, your Honor.
14                              o0o
15
16
17
18
19
20
21
22
23
24
25